**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

BEAU DIAMOND,

    Petitioner,

v.                                                 CASE NO. 8:13-CV-1235-T-30MAP
                                                         CRIM. CASE NO. 8:09-CR-586-T-30MAP

UNITED STATES OF AMERICA,

    Respondent.
_____/

**ORDER**

**BEFORE THE COURT** are Petitioner's Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255 (CV Dkt. 3), memorandum of law in support of the § 2255 motion (CV Dkt. 4), and affidavits (CV Dkts. 5, 6, 7) and exhibits (CV Dkts. 4-1, 4-5) in support of the § 2255 motion.

**Procedural Background**

Petitioner was convicted of wire fraud (7 counts), mail fraud (3 counts), money laundering (7 counts), and the transport of stolen property (CR Dkt. 110). Petitioner was sentenced to one hundred eighty-six (186) months imprisonment on each of the wire and mail fraud counts, and one hundred twenty (120) months imprisonment on each of the money laundering counts and the transport of stole property count (with each term to run concurrently), to be followed by three years of supervised release (CR Dkt. 132). Petitioner appealed. The Eleventh Circuit Court of Appeals vacated one money laundering count, Count 13 of the Indictment (CR Dkt. 155). This Court entered

an amended judgment, dismissing Count 13 and reimposing the same sentences on the remaining counts (CR Dkt. 163).

Petitioner signed his § 2255 motion on May 7, 2013 (CV Dkt. 3). Petitioner presents four grounds for relief.

**Ground One**

In Ground One, Petitioner asserts four claims of ineffective assistance of counsel: 1) counsel failed to recognize a bad indictment; 2) counsel did not zealously represent Petitioner; rather, he went "through the motions" as demonstrated by his improperly filed "boiler plate" discovery motions; 3) Attorney Barnes failed to follow Petitioner's instruction to pursue a possible plea bargain; and 4) counsel failed to "raise, research, pursue" and inform Petitioner of an available defense.

The law regarding ineffective assistance of counsel claims is well settled and well documented. In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court set forth a two-part test for analyzing ineffective assistance of counsel claims:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland*, 466 U.S. at 687.

*Strickland* requires proof of both deficient performance and consequent prejudice. *Strickland*, 466 U.S. at 697 ("There is no reason for a court deciding an ineffective assistance claim . . . to

address both components of the inquiry if the defendant makes an insufficient showing on one."). "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id*. at 690. *Strickland* requires that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Id*. at 690.

Petitioner must demonstrate that counsel's error prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id*. at 691-92. To meet this burden, Petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694.

### A. Sub-claim 1

Petitioner appears to contend that counsel was ineffective in failing to challenge the Indictment on the ground that Counts One through Ten "merely listed the *initials* of the victims of the violations charged." (CV Dkt. 4 at p. 1) (emphasis in original). The Government may "withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law." *Roviaro v. United States*, 353 U.S. 53, 59 (1957). However, "[w]here the disclosure of an informer's identity, or of the contents of his communication, is

3

relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way." *Id*. at 60-61.

Petitioner makes the bare assertion that counsel's performance was deficient in failing to object to the Government using the victims' initials in the Indictment. He has neither alleged nor shown that disclosure of the victims' names would have been helpful to his defense. Consequently, Petitioner has failed to demonstrate prejudice because he has not shown a reasonable probability that, but for counsel's failure to challenge the Indictment and secure disclosure of the victims' names, the result of the proceeding would have been different. Accordingly, Petitioner is not entitled to relief on this ineffective assistance of counsel claim.

**B.     Sub-claim 2**

Petitioner contends that counsel was deficient in filing "boiler plate" motions requesting the Government produce: 1) IRS records of the victims; 2) any exculpatory statements or evidence; 3) the personnel files of testifying law enforcement agents; 4) law enforcement records regarding any potential government witness; and 5) surveillance logs (see CR Dkts. 61-67). Petitioner argues that the "boiler plate" motions show that counsel was merely going through the motions in defending him.

The inspiration for this claim appears to be Judge Pizzo's statement in his March 24, 2010 Order denying Petitioner's discovery motions that "each motion is a generic, boilerplate plea for an order directing the government reveal exculpatory or impeaching evidence." (CR Dkt. 68 at p. 2). Despite this statement, Judge Pizzo did not deny the motions because they were insufficient. Rather, he denied the motions because they were unnecessary in light of the Amended Pretrial Discovery

4

Order that directed the Government to reveal, *inter alia*, all exculpatory and impeaching evidence (CR Dkts. 44, 68). Therefore, Petitioner has not established that trial counsel's handling of the discovery motions amounted to deficient performance or resulted in prejudice. Accordingly, Sub-claim 2 does not warrant relief.

    **C.    Sub-claim 3**

Petitioner contends that counsel was ineffective in failing to pursue a plea bargain after Petitioner requested counsel to do so.[1] To establish prejudice in a scenario like this one, Petitioner must show that the Government would have offered a plea, that the Court would have approved it, and that he would have accepted it. *Jewson v. Crosby*, 2005 U.S. Dist. LEXIS 32978, 2005 WL 1684209, at *49 (N.D. Fla. 2005) (petitioner could not prove prejudice because the evidence showed that the state had made no plea offers or exhibited any inclination to plea bargain) (citing *McClenithan v. Dugger*, 767 F.Supp. 257, 258 (M.D. Fla.1991); *Zamora v. Wainwright*, 637 F.Supp. 439, 443 (S.D. Fla. 1986)). Here, Petitioner offers some evidence that he "desired a plea bargain" (CV Dkt. 7 at p. 2). There is no indication from the record, however, whether the Government would have offered a plea had counsel pursued a plea agreement. Thus, this claim cannot be resolved on the current record.

---

[1] The Court notes that a defendant has "no constitutional right to plea bargain." *Weatherford v. Bursey*, 429 U.S. 545, 562 (1977).

**D.     Sub-claim 4**

Petitioner contends that trial counsel was ineffective in failing to inform him of an available defense. Specifically, it appears Petitioner asserts that counsel failed to advise him of the availability of the defense of good faith reliance on the advice of an attorney or other advisor.

"Good faith reliance on counsel's advice can 'negate[] the mens rea element of willfulness.'" *United States v. Vernon*, 2013 U.S. App. LEXIS 15228, at * 85-86 (11th Cir. July 26, 2013) (unpublished opinion) (quoting *United States v. Petrie*, 302 F.3d 1280, 1287 n.6 (11th Cir. 2002)). "The elements of this affirmative defense are: '1)[the defendant] fully disclosed to his attorney all material facts that are relevant to the advice for which he consulted the attorney; and (2) thereafter, he relied in good faith on the advice given by his attorney.'" *Id.*, at *86 (quoting *United States v. Hill*, 643 F.3d 807, 851 (11th Cir. 2011)). "The clear meaning of a good faith reliance defense on the advice of counsel is that *prior* to committing the offense, the defendant sought the advice of an attorney and, after disclosure of all the relevant facts, counsel advised that the proposed course of action would not violate the law." *Elso v. United States*, 2012 U.S. Dist. LEXIS 72494, at *44 (S.D. Fla. May 24, 2012) (citing *United States v. Johnson*, 730 F.2d 683, 686 (11th Cir. 1984)) (emphasis in original).

In sworn declarations in support of Petitioner's § 2255 motion, Petitioner's mother (Marilyn Diamond Schnell), father (Harvey Diamond), and step-father (Donald Schnell) state that in September 2009, they had a meeting with Petitioner's pre-trial defense attorney Lori Palmieri during which Donald Schnell informed Palmieri that Petitioner had invested $ 2 million with his business legal counsel, Bruce S. Frank, and $ 3 million with fiduciary David Liametz (CV Dkts. 5-7).

Donald Schnell also advised Palmieri that Petitioner had "a good faith reliance" on Frank and Liametz that the funds Petitioner had invested with them were growing at a "1,000 to 1 ratio for Diamond Ventures, LLC., and the investment club members." (Id.). Donald Schnell attested that in November 2009, he also provided this information to Petitioner's trial counsel, the Bernhoft law firm (CV Dkt. 7).

Harvey Diamond attested that Petitioner believed that the funds he invested with Frank and Liametz "were secure and would grow and be held in reserve for [Petitioner's] investors. . . ." (CV Dkt. 5). Further, Harvey Diamond stated that Petitioner had told him that he was "convinced that no matter what happened as a result of his trading activities, there would always be more than enough funds available in reserve to repay all investors in full if need be" from the "High Yield Investment Programs" managed by Frank and Liametz (Id.).

Upon consideration, the Court finds that the claim is properly before the Court and warrants a response.

**Grounds Two, Three, and Four**

In Ground Two, Petitioner contends that he was "indicted by a grand jury no longer functioning as a grand jury." Specifically, he argues that the prosecutor reduced the grand jury to nothing more than a "rubber stamp," and the grand jury cannot fulfill its role as the independent buffer between the government and the accused because the attorneys for the government may be present while the grand jury is in session. In Ground Three, Petitioner contends that the Court violated his Sixth Amendment right to trial by jury when it instructed the jury that "[y]ou must follow the law as I explain it, even if you do not agree with the law, and you must follow all of my

7

instructions as a whole. You must not single out or disregard any of the Court's instructions on the law." Finally, in Ground Four, Petitioner challenges the Court's restitution judgment.

These claims are procedurally barred because they should have been raised on direct appeal. *See Lynn v. United States*, 365 F.3d 1225, 1234 (11th Cir. 2004) ("[A] defendant generally must advance an available challenge to a criminal conviction or sentence on direct appeal or else the defendant is barred from presenting that claim in a § 2255 proceeding. . .This rule generally applies to all claims, including constitutional claims."). Petitioner does not show cause and prejudice for not raising these claims on direct appeal.[2] Further, he does not demonstrate actual innocence. *See Lynn*, 365 F.3d at 1234 (procedural default can be excused if one of the two exceptions to the procedural default rule applies - - (1) for cause and prejudice, or (2) for a miscarriage of justice, or actual innocence).

Consequently, Grounds Two, Three, and Four do not warrant relief.

Accordingly, it is **ORDERED** that:

1.      Ground One, Sub-claims 1 and 2, and Grounds Two through Four of Petitioner's motion pursuant to 28 U.S.C. § 2255 (CV Dkt. 3) are **DENIED**.

2.      The Government shall show cause within 30 days from the date of this Order why the relief sought in Ground One, Sub-claims 3 and 4, should not be granted. The Court considers that when Petitioner filed the 28 U.S.C. § 2255 motion to vacate alleging ineffective assistance of

---

[2] Petitioner asserts that he did not raise these arguments on direct appeal because he was "a layman untrained in the law" and therefore "was unaware of the issue[s]." (See CV Dkt. 3 at pp. 6, 7, 9). Petitioner's *pro se* status does not constitute cause for his procedural default. *See McCoy v. Newsome*, 953 F.2d 1252 (11th Cir. 1992); *Harmon v. Barton*, 894 F.2d 1268, 1273 (11th Cir. 1990).

counsel, he waived any attorney-client confidentiality for the purpose of that attorney's submitting an affidavit.

3. Petitioner shall mail one copy of every pleading, exhibit and/or correspondence, along with a certificate of service indicating the date an accurate copy was mailed, to the Government attorney listed in the bottom of this Order. Should Petitioner fail to include the required certificate of service the Clerk of this Court is directed to reject the document for filing and return the document without action.

4. Petitioner shall advise the Court of any change of address. Failure to do so will result in the case being dismissed for failure to prosecute.

5. Petitioner may have 30 days after the date the Government files its response to file his reply to the response. Petitioner may file a reply only to the Government's response to the ineffective assistance of counsel claims alleged in Ground One, Sub-claims 3 and 4. The reply shall not exceed twenty (20) pages.

**DONE** and **ORDERED** in Tampa, Florida on August 29, 2013.

_____
JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

SA:sfc
Copy to: Petitioner, *pro se*
         Counsel of Record