UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

BEAU DIAMOND,

    Petitioner,

v.                                                 CASE NO. 8:13-CV-1235-T-30MAP
                                                 CRIM. CASE NO. 8:09-CR-586-T-30MAP

UNITED STATES OF AMERICA,

    Respondent.
_____/

**ORDER**

THIS CAUSE comes before the Court upon Ground One, sub-claims 3 and 4 of Petitioner's Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255 (CV Dkt. 3). Grounds One, sub-claims 1 and 2, and Grounds Two, Three and Four of the § 2255 motion were previously denied by Order (CV Dkt. 9). The Government filed a response to Ground One, sub-claims 3 and 4 (CV Dkt. 20), to which Petitioner replied (CV Dkts. 25, 26). Upon consideration, Ground One, sub-claims 3 and 4, are denied.

**I. Ground One, Sub-claim 3**

In Petitioner's third sub-claim in Ground One of the § 2255 motion, he contends that "Attorney Robert E. Barnes failed to follow Petitioner's instructions on pursuing a possible plea bargain." (CV Dkt. 4 at pp. 2-3). In response, the Government asserts that Petitioner's contention is untrue because both his attorneys pursued plea offers. Specifically, the Government states that it made a written plea offer to both Petitioner's former and trial

counsel,[1] and that Petitioner's trial counsel made a plea offer to the Government approximately six days prior to the trial. The Government further asserts that Petitioner declined to accept its plea offer, and it rejected Petitioner's offer to plead guilty to Count 18 of the Indictment, which had a "10-year capped sentencing range."

In his reply, Petitioner does not refute the Government's assertion and evidence that Attorney Barnes pursued a plea offer with the Government (CV Dkt. 26). Instead, he asserts that neither Attorney Palmieri nor Attorney Barnes informed him that the Government had offered to allow him to plead to a 6-count information, rather than the proposed 9-count information (see Dkt. 20-1 at docket p. 5, ¶23).[2] But that is not the claim Petitioner raised in his amended § 2255 motion. The claim Petitioner raised is that Attorney Barnes was ineffective in failing to follow Petitioner's instructions to pursue a plea bargain (see CV Dkt. 4 at pp. 2-3), not that Attorneys Palmieri and Barnes were ineffective in failing to advise Petitioner of a plea offer.

Because the undisputed evidence demonstrates that Attorney Barnes pursued a plea bargain with the Government, Petitioner's claim fails.

Moreover, even if Ground One, Sub-claim 3 could be liberally construed as including a claim that Petitioner's attorneys were ineffective in failing to advise him of the

---

[1]During the criminal proceedings, Petitioner was initially represented by Attorney Lori Palmieri, then subsequently represented by Attorney Robert Barnes.

[2]According to Attorney Palmieri's affidavit, she negotiated a pre-indictment plea to a 9-count information (see CV Dkt. 20-1 at docket p. 5, ¶ 22). Petitioner admits in his reply that he was aware of the offer to plea to a 9-count information (see CV Dkt. 26 at p. 1). Petitioner also admits that Attorney Palmieri sent e-mails to Petitioner's father and Petitioner's mother and father-in-law in which Attorney Palmieri informed them that there was a plea offer from the Government which would allow Petitioner to plea to a 6-count information (Id. at pp. 5-6).

2

Government's offer to allow Petitioner to plead to a 6-count information, the claim would fail. In order for Petitioner to prevail on an ineffective assistance of counsel claim, he must demonstrate both that counsels' performance was deficient, and prejudice. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish prejudice arising out of the plea process, Petitioner "must show a reasonable probability that but for counsel's ineffectiveness: (1) the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances); (2) the court would have accepted its terms; and (3) the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed." *Osley v. United States*, 2014 U.S. App. LEXIS 6706, at *17 (11th Cir. Apr. 11, 2014) (unpublished) (internal quotations omitted) (citing *Lafler v. Cooper*, 132 S. Ct. 1376, 1385 (2012); *Missouri v. Frye*, 132 S. Ct. 1399, 1409 (2012)).

Petitioner has not alleged that he would have accepted the Government's offer to allow Petitioner to plead to a 6-count information if counsel had communicated it to him. Nor is there anything in the record which tends to indicate that Petitioner would have accepted the Government's offer. Therefore, Petitioner has failed to establish a reasonable probability he would have accepted the offer to enter a plea to a 6-count information. *See Smith v. McDonough*, 2007 U.S. Dist. LEXIS 100458, at *67-68 (N.D. Fla. Mar. 14, 2007) (to succeed on a claim that counsel was ineffective in failing to communicate a plea offer to

his client, "the habeas petitioner must allege facts showing a reasonable probability that he would have accepted the plea offer if counsel had communicated it to him.").[3]

Accordingly, Petitioner is not entitled to relief pursuant to Ground One, Sub-claim 3.

**II. Ground One, Sub-claim 4**

In Ground One, Sub-claim 4, Petitioner contends that trial counsel was ineffective in failing to advise him of, and present, an available defense, namely, good faith reliance on the advice of counsel or an expert. In support of this claim, it appears that Petitioner specifically asserts that he gave approximately $2 million to an attorney, Bruce Frank, and approximately $2-$3 million to a broker, David Liametz, and was "led to believe" that the money would be invested, the returns on the invested money would be substantial (a "1,000 to 1 ratio"), the principal amount invested was secure, and the money would be held in reserve to repay, if necessary, the individuals who invested with Petitioner. Petitioner also asserts that he "relied in good faith" on Frank and Liametz, and was "absolutely convinced" that as a result of his investments with them, there would be enough funds available in reserve to repay the investors. The affidavits from Petitioner's mother, father, and father-in-law, indicate that they informed both Petitioner's pre-trial and trial counsel that Petitioner had invested the money with Frank and Liametz, and that Petitioner had "a good faith reliance" on Frank and

---

[3] Attorney Barnes indicates in his affidavit that he extended to the Government "an offer of a plea that Beau Diamond authorized for a 10-year capped sentencing range, but the government rejected the offer." (CV Dkt. 20-2 at p. 3). There is, therefore, evidence indicating that Petitioner would have accepted a plea offer that would have capped his sentence at ten years. Nevertheless, there is no allegation or evidence that had Petitioner pleaded to a "6-count information," his sentence would have been capped at ten years or less.

Liametz and believed that the invested funds were growing and being held in reserve to repay, if necessary, the investors.

The "good faith reliance" defense can "'negate[] the mens rea element of willfulness.'" *United States v. Vernon*, 723 F.3d 1234, 1269 (11th Cir. 2013) (unpublished opinion) (quoting *United States v. Petrie*, 302 F.3d 1280, 1287 n.6 (11th Cir. 2002)). "The elements of this affirmative defense are: '1) [the defendant] fully disclosed to his attorney all material facts that are relevant to the advice for which he consulted the attorney; and (2) thereafter, he relied in good faith on the advice given by his attorney.'" *Id*. (quoting *United States v. Hill*, 643 F.3d 807, 851 (11th Cir. 2011)). "The clear meaning of a good faith reliance defense on the advice of counsel is that *prior* to committing the offense, the defendant sought the advice of an attorney and, after disclosure of all the relevant facts, counsel advised that the proposed course of action would not violate the law." *Elso v. United States*, 2012 U.S. Dist. LEXIS 72494, at *44 (S.D. Fla. May 24, 2012) (citing *United States v. Johnson*, 730 F.2d 683, 686 (11th Cir. 1984)) (emphasis in original).

In Ground One, Sub-claim 4, Petitioner does not assert that either Frank or Liametz advised him that his Ponzi scheme and self-dealing with investor money would not violate the law.[4] Rather, he asserts only that he relied on Frank and Liametz's assertions that the

---

[4] In his affidavit in support of his reply, Petitioner attests, in pertinent part, that Frank "told me that almost all of what I was doing was legal and compliant but that some minor changes may need to be made" and that "I could continue operating as I was and that legally I was fine and my clients were fine." (CV Dkt. 26-2 at p. 2). This is not the claim Petitioner raised in his § 2255 motion. Moreover, despite these assertions, Petitioner cannot establish ineffective assistance of counsel for failing to raise a "good faith reliance" defense because there is neither evidence in the record nor even an allegation that defense counsel were informed that Frank had advised Petitioner that Petitioner's actions were "legal and compliant." (See CV Dkts. 4-7). *See, e.g., James v. Butler*, 827 F.2d 1006, 1017 (5th Cir.1987) (where defendant did not advise counsel of possible defense centering on the impairment of mental faculties due to drugs,

5

money Petitioner invested with them was secure, yielding an extremely high rate of return, and would be held in reserve to protect the investors' investments. These alleged assertions neither speak of the legality of Petitioner's dealings with the investors' money, nor establish that Petitioner did not act willfully when misappropriating the money.  Moreover, as Respondent points out (see CV Dkt. 20 at p. 14), Petitioner's reliance on Frank and Liametz's alleged assertion that the funds Petitioner invested with them were secure and growing at a "1,000 to 1" rate was not reasonable, and therefore insufficient to establish good faith reliance on professional advice.  *Cf. Gustashaw v. Comm'r*, 696 F.3d 1124, 1139 (11th Cir. 2012) ("Reliance on professional advice is. . .unreasonable when the taxpayer knew or should have known that the transaction was too good to be true in light of all the circumstances, including the taxpayer's education, sophistication, and reasons for entering into the transaction.") (citing *Stobie Creek Invs. LLC v. United States*, 608 F.3d 1366, 1381-82 (Fed. Cir. 2010); *Barlow v. Comm'r*, 301 F.3d 714, 723 (6th Cir. 2002)) (internal quotations omitted).

Because Petitioner has failed to demonstrate the viability of a "good faith reliance" defense in his case, he has failed to demonstrate that counsel were deficient in failing to raise the defense, and prejudice.  *See Michael v. Crosby*, 430 F.3d 1310, 1321-22 (11th Cir. 2005) (holding that counsel was not ineffective for failing to pursue a theory of defense that was not cognizable under Florida law); *Byrne v. Butler*, 845 F.2d 501, 513 (5th Cir. 1988)

---

counsel's pursuance of different line of defense was not unreasonable); *Allen v. Sec'y, Fla. Dep't of Corr.*, 611 F.3d 740, 752 (11th Cir. 2010) (counsel was not deficient in failing to investigate alibi defense when defendant did not inform counsel of the relevant facts that he knew), *cert. denied*, 131 S. Ct. 2898 (2011).

(holding that counsel is not ineffective in failing to raise insanity as a defense where the record did not reflect that there was any indication or evidence presented or evident to the attorney that this was a viable defense). Consequently, this ineffective assistance of counsel claim does not warrant relief.

Accordingly, it is **ORDERED** that:

1. Ground One, Sub-claims 3 and 4 of Petitioner's amended motion pursuant to 28 U.S.C. § 2255 (CV Dkt. 3) are **DENIED**.

2. The **Clerk** is directed to enter judgment against Petitioner, terminate all pending motions, close this case, and terminate from pending status the § 2255 motion (CR Dkt. 167) filed in the corresponding criminal case number 8:09-CR-586-T-30MAP.

### CERTIFICATE OF APPEALABILITY AND LEAVE TO APPEAL IN FORMA PAUPERIS DENIED

**IT IS FURTHER ORDERED** that Petitioner is not entitled to a certificate of appealability. A prisoner seeking a motion to vacate has no absolute entitlement to appeal a district court's denial of his motion. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability (COA). Id. "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." Id. at § 2253(c)(2). To make such a showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed

further.'" *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4 (1983)).  Petitioner cannot make the requisite showing in these circumstances.  Finally, because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal *in forma pauperis*.

   **DONE** and **ORDERED** in Tampa, Florida on May 9, 2014.

                           JAMES S. MOODY, JR.
                           UNITED STATES DISTRICT JUDGE

SA:sfc
Copy to: Petitioner, *pro se*
     Counsel of Record